Thank you, Your Honors. May it please the Court, my name is Michael Rossiner and I represent the defendant appellants in this case. I'd like to use my time to clarify some of the more important questions we have in this case and respond to any questions Your Honors may have. Before I begin, I'd like to reserve two minutes for rebuttal. Let me? Excuse me? Two minutes? Two minutes. I'll try to help you, but keep track of your own time, if you will, please. Yes, Your Honor. Your Honor, Justice Scalia, inciting Justice White, stated that, when properly applied, qualified immunity protects all but the plainly incompetent and those that knowingly violate the law. Here- Let me just ask you this. As you know, since the briefing was filed, in this case the Supreme Court handed down White v. Pauley, where they once again instructed the courts of appeal to get to a lower level of specificity in connection with our determination of whether or not qualified immunity is appropriate. They specifically criticized the Ninth Circuit from time to time of being at too high a level of specificity. So I would appreciate, at least for my part, and I imagine my colleagues would feel the same way, when you review the various aspects of your charges, and there are a number of them, if you would tell us what case or cases you believe are close enough to satisfy the requirements of White v. Pauley in terms of specificity. In terms of specificity, Your Honor, I would say that the problem with this case, though, is that we don't have a case where we have a situation analogous to what unfolded that night. And if that's what we're faced with, are we not required under White v. Pauley to grant qualified immunity to the officers in that situation? I think so. I think we grant qualified immunity because as Judge Kaczynski has said on this court, qualified immunity is a highly context-specific inquiry. And the first step is you look at the facts in the light most favorable to the plaintiff, Pauley. You ask, can there be a constitutional violation? But step two is the more important inquiry here, and that is you ask, was the law clearly established such that an officer, a reasonable officer, would know what he or she is doing violated the law? Well, let's look at your first issue. This is to the initial arrest. It seems to me like there's pretty straight law that this arrest has to be in good faith and reasonable. Would you agree? Yes, Your Honor. So if we put it in good faith and reasonable, and that's the general law, in this particular situation, we got Prescott, who was watching a person enter the residence from the backyard. We got a radio to Anderson to cover the front of the house. We got Anderson, who knows it's a white male, knows the person is fleeing, knows he's dressed in black shirt and tan pants. At least that's what his deposition says. And then he comes to the house and arrests this guy who's walking out the front of the house. He doesn't have on a black shirt. He doesn't have tan pants. He's old. He doesn't really look like, from the picture, he would have been able to outrun the police or jump bushes, and they arrest him. What's in good faith and reasonable about that? Your Honor, Deputy Anderson arrived at that same moment that Mr. Sharp was coming out of the house. I understand. But nonetheless, he knew he was a white male. He knew he was fleeing. He knew that he had the black shirt and the tan pants. If I go where you want me to go, it would seem to me that I have to suggest that it is reasonable and also good faith to simply arrest somebody because they're white. No, Your Honor. This is... What else is there which would give this policeman the opportunity to make this arrest? First of all, it's at night, so the situation is different than any other case that's been cited. So it's at nighttime. It's also a dynamic situation where you have the officer, a late arriving officer, who hasn't been privy to all the facts that the other officers have. I understand, but he is privy to the facts that I've just talked about. Well, right, Your Honor, but... But then this guy isn't running, and this guy isn't in black shirt, and this guy isn't in tan pants. Well, Your Honor... And it's two minutes later when he went in the back. Now he's coming out the front. Well, Your Honor, at night, the tan pants and the shirt is... The specificity or the blue shirt and black shirt is diminished at a nighttime scene, especially when you're a late arriving officer and you arrive at the exact moment that Mr. Sharp is coming out of the house. Well, we had a similar case, don't we, where officers were chasing after a guy, and the guy ran into the house, and so they followed him, and he went and hid under a bed. And they went down and arrested a different guy, and then they said, well, I guess we screwed up, but they couldn't get out of it on qualified immunity. Well, I haven't seen that case cited by the appellees, and in that case, I don't know if that involved an arrest warrant or a search warrant, but in this case, we had an arrest warrant, and the person lived at that address. It was a perfect match. That's all Deputy Anderson knew. Well, the probation officer knew to the contrary, did he not? Well, the probation officer was told a couple weeks ago, or a couple weeks before the incident, that he was no longer living there. However, there was no new information as to where he was at, and apparently, Mr. Sharp had said he had gone to Mexico, but he was there that came. The case I'm citing is Lopez. But I guess I'm just trying to, I mean, it seems to me that on these facts, and on me thinking about all of this kind of stuff, and I'm really measuring it down because I have to take good faith, and I have to take reasonableness, and when I get those two, and I look at what happened in this case, I'm having a tough time saying that there is no clearly established law upon which the facts as alleged by the plaintiff wouldn't make it on the initial detention. Well, Your Honor, there's two steps with qualified immunity. The first step, we've gotten there, and that is whether or not there was a violation of the law. Well, but the law that I cited you, which is Hill v. California, where they have probable cause to arrest, that case leads us to good faith and reasonableness. So I'm having to determine whether there was good faith and reasonableness in this particular case. Well, in Hill, that didn't involve someone at night, didn't involve a dynamic situation, it involved a calm, cool, collected decision by the officers. The two robbery suspects in that case implicated Hill, and they went to the, and it was a general description that the suspects gave. They go to that same exact address, and they find a guy meeting the general description in broad daylight, and they arrest him. In Hill v. California, they said that was proper. That was proper. If you reasonably suspect that the person you're arresting is subject to the warrant, then that is, that's not constitutional. When did, when did Officer Anderson learn that the arrestee said, my name is Merritt, and then later Merritt Sharp? When he first arrived at the house, he detained him. It was immediately after he detained him, he asked for his name, and he said Merritt. Was this, was this before or after you believe the arrest occurred? Well, it was pretty much simultaneous with the... Had he been in, was he in cuffs by the, before he said, my name is Merritt Sharp? That's unclear from the facts, if he was actually in cuffs at that time, but I believe... He was in cuffs before he said, my name is Merritt Sharp. I believe he was not in handcuffs when he said, my name is Merritt, and then... Well, you don't know what the record will show. Well, the record's unclear on that as to the timeline. And did Anderson know that the name of the person that he was supposed to apprehend coming out the front door was named Merritt Sharp? I believe so, because... What does the record show there? I mean, he was not even assigned to this case. He was just patrolling it in the area, and they said, come. So when they said, come and watch for the front door, did they say, watch for the front door for a man named Merritt Sharp, or not? The record on that is unclear, but we do know that Deputy Anderson knew that the suspect was coming from 408 Camino Bandera. And that's where he matched it. Well, the question is how much additional strength can be given to this arrest by the fact that the guy who was arrested had the name that was known to be on the arrest warrant. But you're telling me that it's not clear that Anderson knew that name. No, Your Honor. That wasn't something that we specifically spotlighted as being... Okay, that's fine. Thank you. Your time's expired, counsel, so... Thank you, Your Honor. We'll hear from the deputy. Judge Smith, maybe before we go there, there are a couple of questions I want to ask you about the continued detention. Shall we do it now, or do you want to... Let's do it now. Let's get him up here... Come on back. ...so that we can have somebody respond. Okay. Because it seems to me there are two other issues where I have some problems. One is on the continued detention, after knowing he wasn't the right guy. And the second is on the First Amendment retaliation claim. As to the continued detention, it seems to me that in this particular matter, he was kept for 18 minutes after they knew, absolutely knew, that he wasn't the guy. Seems to me that clearly established that continuing detention on an arrest warrant is not reasonable. Your Honor, Michigan v. Summers states that... Summers has nothing to do with an arrest warrant. Well, Katzke v. Long and Dawson v. City of Seattle apply the reasoning in Michigan v. Summers to arrest warrants. So we're talking, I've got to go to a case which is not... Well, it's one of our cases. It isn't even published. I've got to go to that case to make a reasonable approach to the law that we should apply the or, excuse me, search warrants to arrest warrants. Well, Your Honor, the point is, if we go to step one, whether or not this was a constitutional violation, Your Honors can disagree about whether or not it should be applied to arrest warrants or search warrants, or if in this case... I don't know that we have any right to disagree, because Katzke doesn't say anything about it. But the question is whether it was clearly established in the... Maryland's pretty straight. An arrest warrant is different than a search warrant. Well, the Maryland v. Bowie case, what you're talking about there is a footnote that states that... Note two. Right, footnote two, which states here, the quote starts here, the arrest warrant implied nothing about whether dangerous third parties will be found, because in that case, the officers had argued, well, if we go in for an arrest warrant, we should be able to search the premises. We're not talking about a probation search, which could have been the case here. And the court said that the arrest warrant implied nothing about whether or not they should be able to search the entire premises. Okay. So I've asked you about that because I wanted you to have a chance to respond. The second is the First Amendment retaliation claim. I mean, I read this first. If you weren't being so argumentative, I'd probably put you on the curb. Seems to me that Ford is pretty much on point. Well, Your Honor, the law there is the facts... The officer's conduct would chill a person of ordinary firmness. Seems to me everybody agrees with that. You don't even argue about that. What you're really arguing is whether the desire to chill speech was but for cause of the adverse action. Exactly, Your Honor. He was detained not because of his speech, and he was continued detained not because of his speech. I guess I'm having a tough time understanding. If you weren't being so argumentative, I'd probably just put you on the curb. How that doesn't say the officer's desire was but for cause of the action. Well, the action... That's straightforward what he said. Well, the action being patrol car versus curb. I'm not sure if that's a distinction without a difference. He's still detained. He's still in police custody. So the fact... I mean, Ford was in a jail, I understand. But this is as close to a jail as you're going to get. He's in handcuffs in a car. I would... All because of what he said for 18 minutes. How long could he have kept him there? Two hours? Was that acceptable? I think the case law suggests that as long as the search is going on, neither of you may notice that two to three hours was reasonable because... They didn't have a search warrant. Well, you're right. There was an arrest warrant for a subject that was fleeing that they were looking for. And they knew he wasn't that person. Right. And once he was there, my colleague has said it was 18 minutes. What if it was two hours? Is that acceptable? You know, Your Honor, in that situation, I wouldn't have all the facts. In this situation... How about a day? Send him sandwiches, but keep him in the car. Well, Your Honor, I can tell you Baker v. McCall, and he was detained for three days, and the Supreme Court found that that was reasonable under the circumstances. That wasn't an arrest warrant, though. No, Your Honor. But in that case, you had a mistaken identity and protested. And it was for three days. In this case, you have three different methods which the officer could have detained Mr. Sharp. That is mistaken identity, Hilby, California. Michigan v. Summers, detention while serving a warrant. Or Sanchez v. Canales, detention while probation search is going on. Any other questions by my colleagues? I question him about the things that were most on my mind. Thank you, Your Honor. All right. Now we'll hear from the appellee. May it please the Court, Brenton Aiken-Hans from the law office of Jerry L. Sterling on behalf of the appellee in this case, Merritt L. Sharp III and his wife, Carol Sharp. May I reserve two minutes for rebuttals, Your Honor? There's no rebuttal on your part. You're the appellee. You can do whatever you want with your time. You can stop for a minute and then say it's rebuttal if you want. Understood. Okay. I'd like to know, you've got a lot of different parts of this. You heard what I said to opposing counsel about the White v. Pauley case. You had a very fine district judge, Judge Guilford, who ruled in your favor below. But the Supreme Court says it's got to be very, very close. As you know, some of these, some of them are not as close as others. What, in your judgment, are, say, the best two causes of action that you have where you think the case law is so close that you've met the White v. Pauley standard? What are those and what are the cases that you would rely upon? Your Honors, just with regard to the standard for qualified immunity that you're referring to in terms of it being defined at a high level of specificity, I just want to clarify that the court has also said that it can be clear in light of pre-existing law. Now, in terms of, first of all, the claims that you mentioned that are the most solid in terms of being clear, that would be the first, I'm sorry, the Fourth Amendment claim for unlawful seizure of person of Merrill Sharp III. That's your first claim? Yeah, that would be our first claim, because that comes down to whether it was reasonable in light of the facts known to the officer at the time. But reasonable is almost inherently a balancing factor of all the considerations. It's hard to find on-point cases on reasonableness. That's correct, and to some extent, you're always going to be able to find a certain variation of facts that's distinguishable from the one at issue. But crucially, the cases that we've relied upon and that the appellant agrees with, that would be Hill case for one, that the seizure to a warrant must be reasonable. If it's a mistake of identity, it must be reasonable. Now, the facts here, which, by the way, some of them are disputed, and those disputes have to be resolved in our favor. The facts here do suggest, and I think the district court ruled properly, that the seizure was unreasonable based on these facts, because, for example, he was wearing a different color shirt. The suspect that was described to Officer Anderson over the radio was a black shirt, Mr. Sharp wearing a light blue shirt. Tan pants, Mr. Sharp III was wearing blue pants. They said that he was fleeing. Sharp III was walking towards the officers. And, of course, if you see on the supplemental record, page 191, you can see a picture of Merrick Sharp and his son. They look nothing alike. Do you agree that Officer Anderson did or did not know the name of Sharp, the person he was there to apprehend? Off the top of my head, I don't remember if he actually knew his name at the time. I'm asking whether the record is clear, and you're saying you don't know. Just off the top of my head, I could refer to it and probably give you an answer whether he knew his name. But as far as the description of who it was and what was happening, that was something he definitely did have. He heard that over the radio. He was not privy to the... There was a briefing session that they had before they went to serve the warrant, the other deputies, where they... But Anderson wasn't part of that discussion, was he? Right. No, he was not part of that discussion. He relied exclusively on the description of the suspect over the radio. So he probably did not know the name of the suspect? To my mind, at that time... I'm not sure. It was possible that he might have somehow gotten a hold of it by other means through some sort of a search, but I would need to look back through the records. Does it matter that he and the others were warned that, as it turned out, the younger Sharp had a record of violence against law enforcement officers? Would that fact in any way ameliorate what happened here in terms of how quickly they acted in the lack of care? It would not be sufficient to ameliorate what happened, but certainly it would be relevant. Any reasonable officer would want to consider what the suspect they're looking for has done in the past. And I understand that. I'm not suggesting that every law enforcement action has to be unreasonable because I happen to be on this side. But in this case, the warrant that they're serving appears to be because of a probation violation. So you have a situation where the police are showing up to a house to serve warrants for a probation violation. They're calling in the cavalry. They're calling in the helicopters, the K-9 unit. They're running. They're jumping over the fence. And the testimony of Deputy Flores, she even admits that they were just intended to detain everybody. Now, in this situation here under these facts, I don't think any reasonable officer could say that they were acting within the law. And that would be the touchstone of qualified immunity. Whether a reasonable officer in light of pre-existing law could think that the actions under the specific circumstances they confronted would be a violation of somebody's rights. Okay. So his initial arrest was your best case. What's your next best cause of action? The next best would be, I believe, the... Well, it's related, I guess, but the search of person for Merritt Sharp III because that would be incident to his arrest. So if his arrest was lawful, then that would be lawful too. To some extent, they're so unrelated that they might... Nothing really unusual about the search. It really is just piggybacked on the arrest, isn't it? Exactly. So, I mean, to answer your question, I guess that would be the next strongest because of its relation to the first one. But I would then say the First Amendment claim, considering the statements, the admissions that the deputy made at the scene concerning him being kept in custody based off of him being, I guess, disagreeable on a personal level to the officer. And I believe he said, if you weren't being so argumentative, you would have put him on the curb. And that, to me, strikes me as an admission that it was his speech that was the motivating factor for keeping him in custody and not any sort of an objective concern for, at least for detaining a criminal with respect to Merritt Sharp III. Case law say about how long... Let's assume for a moment that the officer discovers that he's got the wrong guy. How long does he have under the case law to release him without having further problems? To my mind, there's a, I believe it's, I think it was Gonzalez or something like that. But there's a case that involves detaining a suspect and it was long enough in order to ascertain his identity. And at that point, you have to release him. There's no authority, to my mind, that gives officers leeway to just detain people and who they don't even suspect of crime. What about the other way? Is there a case law that says you can't detain him any longer than X? What case would you cite that where there has been a violation that has stuck, where there's a time period involved? I believe there was a recent case with the Supreme Court. It was, I think it involved a dog sniff. And it was, I'd have to get the name for you, but I can describe the relevant facts here. It said that when the officer has detained somebody, and this was in the context of a traffic stop, by the way, that they can keep the suspect detained no longer than necessary for purposes of that stop for them to cite them and to release them. Now, the whole thing that that case has been cited for is that when you prolong the stop or the detention for reasons that are unrelated to the initial reason for the stop, and it turns into an investigatory fishing expedition. I would argue that in this case, that holding him once there was a mistaken identity, that anything longer than that point on was unreasonable. At that point, yes, he's an innocent person. He has not committed a crime. In fact, he's a supporter of law enforcement. Whether he's on the curb or in the car. Exactly. Being held either way. Right. Now, for purposes of the officers executing the warrant, it would be perfectly reasonable for them to say, maybe, don't interfere with their trying to arrest his son, but that's not what happened. What they did is they arrested the dad. They kept him in custody, and they didn't even put him on the curb. As you mentioned, that also would still be a violation, assuming he was not free to leave in those situations, because he'd still be seized without reasonable suspicion or probable cause of criminality, foot or crime having occurred. Okay, so I have a question for you. If we're going to do the First Amendment retaliation claim and come out on your side on clearly established law, is Ford your best case? Ford versus Yakima, yes, it stands out to me in terms of a case. I've heard how counsel has differentiated Ford, distinguished Ford, saying it's not really a good case because ta-da-da-da. How would you respond? I would respond that you can always, first of all, you can distinguish on facts that are. But you've got to think about what Judge Milan Smith asked you right off the bat. You know, you've got to think about what that new case from the Supreme Court really said and what it's saying. And now we're looking at Ford. Can that really be determinative, given this new case from the Supreme Court? I believe, yes, it can. Because the law as it stood at the time of Yakima and I believe even before Ford versus Yakima, I believe it was a Duran case, which they relied upon in Ford versus Yakima. It would have been apparent to a reasonable officer in light of those circumstances that you could not, and I'm going to reference, put it with reference to the facts at issue here. You could not keep somebody in custody simply because they're being argumentative, because of their speech. And now something has come to my mind from what I remembered in their brief. I believe they said that it was, him being argumentative was not a speech thing. It was a, there was some sort of a collateral safety issue because him being argumentative presented a safety concern. That's something that, frankly, I just don't buy because people are entitled to be argumentative. They're entitled to say what their opinion is. And in terms of an officer not liking the way they say it, I believe the First Amendment protects this type of argumentativeness. If you have an opinion about being unlawfully arrested or having your wife accosted or them going inside your house. The officers don't really object to that. They really concede that there was speech there. I believe that they- The question was whether they took action which would be sufficient to chill a person of ordinary resoluteness on the exercise of free speech. That is what the district court held. And that, I believe, was the correct ruling because those, that conduct, the officer's conduct in keeping him in custody because he was being argumentative- Problem with finding a comparative case if we focus down on what would, whether the officer's response would chill a person is very different facts. A person would be more chilled probably by being held off to jail than he would be to be forced to sit on the curb for another 20 minutes. I'm sure that there are many things the officer could have done that would have chilled him more. But I believe it's sufficient to chill a person of ordinary firmness. Somebody who, in other words, somebody who is not uniquely predisposed to giving their opinion or withholding their opinion. That type of conduct by the officer, I believe, would be sufficient. In light of what's been clearly established in Ford v. Yakima and the other line of First Amendment cases, that would chill a person of ordinary firmness. I'd like to address- Point to one second. Let me ask my colleague, too. Either of you have additional questions? Unfortunately, counsel, your time is expired. But we thank you very much for your argument as we do the other counsel. And the case just argued is submitted. Thank you very much. Thank you, Your Honor.
judges: Ebel, M. Smith, N.R. Smith